IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JODIE B.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Civil No. 6:24-cv-00295-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

    Plaintiff Jodie B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 4. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in November 1978, plaintiff alleges disability beginning April 15, 2020. Tr. 179-80. In her application, plaintiff alleged disability due to "right thumb carpal metacarpal" and "joint immobility." Tr. 213. At the hearing she additionally testified to left thumb issues, left ankle pain and weakness, joint pain, and daily headaches. Tr. 51-58. Her application was denied initially and upon reconsideration. Tr. 116-19, 122-26, 130-31. On February 10, 2023, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Katherine Weatherly. Tr. 30-67. On February 27, 2023, the ALJ issued a decision finding plaintiff not disabled. Tr. 12-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of April 15, 2020, through her date last insured of December 31, 2022. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe, medically determinable impairments: "cervical degenerative disc disease with spondylosis; lumbar degenerative disc disease; multiple calcific enthesopathy; bilateral thumb carpometacarpal osteoarthrosis, status post right interphalangeal fusion; Ehlers-Danlos syndrome; chronic pain syndrome, and obesity." Tr. 17. At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 19.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform sedentary work, except:

> with no climbing of ladders, ropes, and scaffolds, occasional crawling, and frequent balancing, stooping, kneeling, and crouching. The claimant could handle and finger with the right (dominant) hand no more than frequently. She was to avoid concentrated exposure to extreme cold and hazards such as heights and heavy machinery.

Tr. 19.

At step four, the ALJ found plaintiff unable to perform any past relevant work. Tr. 24. At step five, the ALJ determined that plaintiff was capable of performing jobs existing in significant numbers in the national economy such as document preparer, final assembler, and addresser. Tr. 25. The ALJ therefore found plaintiff not disabled. Tr. 25.

## DISCUSSION

Plaintiff argues the ALJ committed two harmful errors in her written opinion. She contends the ALJ erred by (1) improperly rejecting her symptom testimony, and (2) improperly evaluating Dr. Eric Sharp's medical opinion. For the reasons that follow, the Court finds the ALJ erred, reverses, and remands for further proceedings.

**I.    Symptom Testimony**

Plaintiff first contends the ALJ erred by discrediting her subjective symptom testimony without clear and convincing reasons for doing so. Pl.'s Br., ECF No. 11 at 10-17. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is

insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified she is right-handed. Tr. 38. She lived with her husband, mother-in-law, and eldest daughter. Tr. 38. Her daughter helped her with her hair, getting dressed, preparing meals, and cleaning the house. Tr. 48-49. Plaintiff drove herself only for trips that were no more than five or ten minutes long. Tr. 38-39. She had difficulty sitting still. Tr. 38. She sometimes experienced sudden, blinding headaches with sensitivity to light. Tr. 38- 39. She experienced subluxations in her shoulders. Tr. 39. Her last job ended because she could not walk without being in pain. Tr. 42. She had also gotten sick and started experiencing tremors in her hand. Tr. 42-43. She could not return to her past work because she was unable to bend her right

dominant thumb. Tr. 43. She started using a cane about six months prior to the hearing because of her left ankle. Tr. 47, 55.

Plaintiff testified to waxing and waning symptoms. Tr. 49. She exercised at a gym for four or five months, but no longer does so. Tr. 46, 57. She napped during the day because of fatigue. Tr. 48. She was never home alone. Tr. 49. She was very clumsy and fell a lot. Tr. 49. She attended physical therapy once a week and found it to be very helpful. Tr. 50. She wore braces on both hands and on her right knee. Tr. 50. She wrapped her left ankle because she was unable to wear a brace with her shoe on. Tr. 50.

The symptoms in her left hand significantly impacted how she used the hand and prevented her from doing things repetitively over time. Tr. 52-53. She had trouble with "basically everything." Tr. 53. She could not even open a Ziploc bag. Tr. 53. She could do an activity with her left hand for ten to fifteen minutes before needing to stop because of her symptoms. Tr. 53. The fusion in her right hand also limited how she could use that hand. Tr. 54. She had been advised to avoid repetitive activity with the right hand. Tr. 55. She estimated that she could do an activity with her right hand for ten to fifteen minutes before having to stop. Tr. 55. She could stand for five minutes before having to sit down. Tr. 56. She could walk about a block with her cane. Tr. 56. She experienced daily headaches. Tr. 58. Her recent Botox treatment had not helped her migraines but did help the pain in her shoulders. Tr. 58..

In written testimony, plaintiff reported she experienced joint instability and hand limitations that impacted her ability to work. Tr. 201. She had recently undergone her first hand surgery and needed help to perform daily tasks. Tr. 201. She reported that her doctor and physical therapist recommended she lift no more than one pound. Tr. 201. She needed help with personal care tasks, preparing meals, and doing household chores. Tr. 202, 203, 204. Her

daughter and mother-in-law helped her care for her pets. Tr. 202. She could go out on her own for only twenty minutes, "otherwise [she] may need assistance." Tr. 204. She could no longer do her hobbies because of her conditions. Tr. 205. She left home only for doctor appointments, physical therapy, prescriptions, and groceries. Tr. 206. She could walk only to the end of her block (about one minute) before needing to stop and rest. Tr. 206. She was wearing a brace/splint following surgery. Tr. 207.

      The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20. Specifically, the ALJ discounted certain limited aspects of plaintiff's symptom allegations because they conflicted with objective medical evidence in the record, and other evidence of her improvement with treatment and daily activities. Tr. 20-22.

      The ALJ first highlighted that plaintiff's issues with her left and right hands improved with treatment, which was a clear and convincing reason to discount her testimony about limitations associated with these impairments. An ALJ may also reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Although plaintiff testified she had trouble doing "basically everything" because of hand pain, Tr. 53, and that she could not even open a Ziploc bag, the ALJ

noted her medical record shows her hand symptoms improved over time with treatment. For example, the ALJ observed that plaintiff reported doing well after steroid injections and surgeries to the right hand in July 2020 and December 2021. Tr. 21, 642, 657, 713. As of September 2020, just two months after her first surgery, she denied any right-hand pain. Tr. 648-49. In June 2021, she again reported she had been doing well for the last year but was starting to have some joint swelling. Tr. 646. And when an October 2021 imaging study revealed an osteophyte on the interphalangeal joint of the right thumb, plaintiff proceeded with a right thumb joint fusion in December 2021. Tr. 641-42. She again reported improvement with surgery, though she then began to experience left thumb pain. Tr. 624, 627, 961. Her left thumb pain likewise improved after she underwent an injection in February 2022. Tr. 627, 961. In fact, the injection did not wear off until January 2023, at which time plaintiff elected to proceed with surgery on her left hand. This was all substantial evidence supporting the ALJ's conclusion that plaintiff's hand-related symptoms improved with treatment, and the decision to discount her symptom allegations as a result.

  The ALJ also reasonably discounted plaintiff's allegations that she could only lift one pound and that she needed a cane as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498. Plaintiff testified that she was "only allowed" to lift one pound and that she needed a cane to help her walk. Tr. 46, 48, 201. The ALJ first noted that her doctors instructed her not to engage in "heavy" lifting, which was inconsistent with her characterization that "via [her doctor and physical therapist" she was only allowed to lift one pound. Tr. 22 (citing Tr. 201, 651, 1096). The ALJ also reasonably found plaintiff's testimony that she required a cane to walk was unsupported by the record. Tr. 22. The ALJ first noted that a cane was never prescribed. *Id.*; *see*

7 – OPINION & ORDER

SSR 96-9p, 1996 WL 374185 at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed"). The ALJ further noted that plaintiff often had a normal gait on examination, both before and after she alleged she started needing a cane. Tr. 22 (citing Tr. 23, 631, 960-62, 1043, 1047, 1050, 1105-08). The ALJ acknowledged that there were isolated gait abnormalities on examination but contrasted this with a physical therapy note indicating positive response to treatment and subsequent examination findings revealing no gait abnormalities. Tr. 22 (citing Tr. 968, 987, 1043, 1047, 1086-91). In sum, these records all conflicted with plaintiff's allegations about need for a cane and inability to lift and were clear and convincing reasons for the ALJ to discount plaintiff's testimony about these limitations.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her own statements about daily activities. Tr. 22. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d

1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility).

The ALJ reasonably found several of plaintiff's reported daily activities conflicted with her allegations about physical limitations. To discount a plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn,* 495 F.3d at 639. The ALJ reasonably identified evidence showing plaintiff was more physically capable than she alleged. For example, while plaintiff testified that she only went to the gym for four or five months, Tr. 46, her reports to her treating providers indicated a higher level of activity. As the ALJ observed, plaintiff often reported engaging in yoga and walking for exercise, which helped reduce her symptoms. Tr. 22 citing Tr. 298-301, 331, 581-82, 595-99, 805-09). In April 2021, she reported she was "getting a greenhouse ready." Tr. 22, 571. She also reported going to the gym daily in July 2021, and again reported going to the gym in December 2021 and January 2022 and stated that exercise improved her symptoms. Tr. 22 (citing Tr. 819-23, 853-55, 874-77). In August 2022, she reported using a rowing machine, though on a limited basis. Tr. 22, 985. As the ALJ observed, these reports of exercise span a significantly longer period of time than the four to five months of exercise to which plaintiff testified. Further, as noted above, plaintiff reported that the activities were beneficial in managing her symptoms, and suggest a greater level of activity than she alleged at the hearing. Because the ALJ reasonably cited several activities that conflict with plaintiff's allegations about the limitations her physical symptoms cause, this was another clear and convincing reason for the ALJ to rely upon to discount her testimony.

9 – OPINION & ORDER

## II. Medical Opinion Evidence

Plaintiff also argues the ALJ erred when finding Derek Sharp, D.O.'s medical opinions unpersuasive. Pl. Br. at 2-10. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In January 2023, Dr. Sharp reported in a written statement that he had been treating plaintiff since April 2019 and averaged fourteen visits with her per year. Tr. 1093. Plaintiff's diagnoses included essential hypertension, atherosclerosis of both carotid arteries, allergic rhinitis, bilateral hearing loss, metabolic syndrome X, autoimmune thyroiditis, 5,10-methylentetrahydrofolate reductase deficiency, hypothyroidism, obesity, nausea, panic disorder

10 – OPINION & ORDER

without agoraphobia, generalized anxiety disorder, depression, ADD, Ehlers-Danlos syndrome type III, idiopathic osteoarthritis, right knee internal derangement, tight posterior capsule of right shoulder, chronic midline low back pain without sciatica, chronic midline thoracic back pain, neck pain, right hip pain, arthralgia of right hand, trigger finger of right thumb, chronic pain of both knees, degenerative arthritis of interphalangeal joint of right thumb, enthesopathy of hip region on both sides, osteophyte of both hips, left ankle instability, migraine, mononeuropathy, peripheral neuropathic pain, chronic pain syndrome, carpal tunnel syndrome of right wrist, insomnia secondary to pain, cervical degenerative disc disease, cervical radiculopathy, disseminated idiopathic skeletal hyperostosis, and sleep apnea. Tr. 1099-1102. Plaintiff's symptoms included joint, spine, and muscle pain, depressed moods, anxiety, fatigue, right foot and leg numbness, and fingertip numbness. Tr. 1094. Relevant clinical findings included imaging results. Tr. 1094.

    Dr. Sharp opined that plaintiff needed to lie down or rest approximately ten times a day for at least an hour duration due to significant fatigue. Tr. 1094. Her medications could cause varying levels of sedation. Tr. 1095. She was unable to walk a city block without rest or significant pain. Tr. 1095. She could sit for fifteen minutes at a time and four or five hours total in an eight-hour workday. Tr. 1095. She could stand/walk for fifteen minutes at a time and two hours total in an eight-hour workday. Tr. 1095. She needed a job that permitted shifting positions at will from sitting, standing, or walking. Tr. 1095. She would need to take multiple five- to ten-minute breaks every hour during an eight-hour workday. Tr. 1096. She could lift/carry ten pounds occasionally and less than ten pounds frequently. Tr. 1096. She could handle on the right for 20% of the workday, handle on the left for 25-30% of the workday, and reach for 20-40% of the workday bilaterally. Tr. 1096. She would need to take a ten-minute break after using her

11 – OPINION & ORDER

hands to perform handling or fingering activities. Tr. 1096. She would periodically need to elevate her legs during a physical eight-hour period. Tr. 1096. She would be absent more than four workdays per month. Tr. 1097. Dr. Sharp opined that the limitations assessed had been present since he first started treating plaintiff but noted they had worsened over the last two years due to degradation of her hands and joints. Tr. 1097.

The ALJ found Dr. Sharp's opinion unpersuasive. Tr. 23. She disregarded his opinion because he "did not document abnormalities of strength or gait or signs of fatigue that would support the need for such restrictive sitting, standing, and walking. Tr. 23. She also found his opinion unpersuasive because he "did not document findings to support restrictions in use of the hands and arms. His most recent examinations note no neurological deficits." Tr. 23. In doing so, however, the ALJ disregarded the impact of pain, hypertonicity, and decreased range of motion documented in Dr. Sharp's chart notes, his notes about fatigue, and evidence that plaintiff required additional specialist treatment due to worsening symptoms during the relevant period.

First, the ALJ failed to adequately address the strength of the evidence underlying Dr. Sharp's opinion when finding it unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ noted Dr. Sharp "never observed abnormalities of strength or gait, neurological deficits, or signs of fatigue," but failed to address the impact that pain, hypertonicity, and decreased range of motion (symptoms Dr. Sharp did observe) had on plaintiff's ability to function. Tr. 22. Dr. Sharp also relied on the objective evidence from other providers when he opined plaintiff would be unable to sustain functioning throughout a full-time workday and workweek, *See, e.g.,* Tr. 911, 968, 975, 987, 1030-31, 1037

12 – OPINION & ORDER

1094-97. The ALJ erred in disregarding those findings and suggesting only that certain other "objective" findings could support the functional limitations Dr. Sharp assessed. On remand, the ALJ must consider the strength of this evidence and whether it justifies the limitations provided in Dr. Sharp's opinion.

The ALJ also failed to consider substantial record evidence that was consistent with Dr. Sharp's medical opinions. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). As the Commissioner notes in his brief, the ALJ "found Dr. Sharp's opinion unpersuasive because it was inadequately supported and inconsistent with his treatment notes," *not* because it was inconsistent with other record evidence, or more restrictive than other persuasive medical opinions in the record. Def. Br. at 12 (citing Tr. 23). This is error. As plaintiff highlights, the ALJ failed to consider the rest of the medical record, a large part of which is consistent with Dr. Sharp's opinion. *See* Pl. Br. at 7-8 (describing the medical opinions of Drs. Chen and Tsai, which support Dr. Sharp's opinion). These records reflect that plaintiff's fatigue, Ehlers–Danlos syndrome, and left hand dysmetria all support Dr. Sharp's conclusions. *Id.* Although plaintiff moderated her pain with treatment, and did activities which suggested greater capability than reflected in her testimony, the medical record still suggests she had significant physical limitations throughout the relevant period, which fits Dr. Sharp's opinion that she would need periodic rest, and would be unable to handle the eight-hour work day. Tr. 1096. Ultimately, the ALJ failed to cite substantial evidence of inconsistent medical records to support her decision to find Dr. Sharp's opinion unpersuasive, which was error.

### III.     Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful errors by failing to support her decision to find Dr. Sharp's opinion unpersuasive with substantial evidence. After reviewing the record, however, conflicts

and ambiguities remain between the medical record (for example, the state agency opinions that plaintiff could perform light work), and Dr. Sharp's opinion. The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can adequately evaluate Dr. Sharp's opinion, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

IT IS SO ORDERED.

DATED this 30th day of December, 2024.

                                                  /s/ Jolie A. Russo  
                                                Jolie A. Russo  
                                                United States Magistrate Judge